Our next case is EcoFactor v. Google, 2023-11-01. Mr. Van Nist, good morning. Good morning, and may it please the Court, Bob Van Nist from Kecker, Van Nist & Peters, here this morning on behalf of Google. I'm going to address the damages issues and the issues arising from the 327 demand reduction patent because I am today an appellant. Last week I was an appellee. As the Court knows, EcoFactor dismissed its appeal in its entirety. That was done voluntarily, without any compensation from Google. The damages opinion of EcoFactor's experts should never have been presented to the jury. It was based on a completely false premise, manufactured for the litigation by trial counsel, and lacking any basis in the evidence. Mr. Kennedy testified that the going rate for licenses to EcoFactor's patents was a specific per-unit amount. But the only even arguable support for that was three whereas clauses inserted into settlement agreements by EcoFactor and its trial counsel after this lawsuit began. Can I ask you a question about, it seems to me, tell me if I'm missing something. You all, your side did not put on any alternative damages theory in the case, correct? We attempted to impeach Mr. Kennedy, that's correct, Your Honor. Okay, so you had no alternative number, I guess presuming that strategically or otherwise you thought you were going to win on infringement and so it wouldn't be necessary. But you were wrong about that, and so let's assume that we affirm on the infringement verdict and we send it back for a new trial. What is the jury supposed to do in order to get the number? The jury could be presented with appropriate evidence. It could be presented with these license agreements. It could be presented with evidence of other Google licenses as was presented to the jury. But what it couldn't do is rely on these whereas clauses unless EcoFactor came forward with some of the numbers. What about the testimony of its witness? Was it Mr. Habib? Mr. Habib testified that the per unit amount, which I'm not stating in open court, was what EcoFactor wanted, but he testified, as did Mr. Kennedy, that no one at EcoFactor or the expert had ever seen any sales or projected future sales for any of the licensees. They testified that they had... Isn't that the license that doesn't have the language that you point to in the other licenses about how this isn't based on a determination of royalty or sales? The Johnson Controls has now sued EcoFactor, alleging that they are misusing that agreement. That's not my case. Fair enough. My case is what I've got before me. Fair enough. Fair enough. We ask the courts to take notice of that. But in the case of Johnson, the 327 patent wasn't even asserted. In other words, that license agreement, the 327 patent, although it's part of a big portfolio, wasn't even asserted. Well, which takes us to another point in the damages, which I think you're raising, which is the failure to apportion based on the patents that are asserted. That's right. That's right. The second problem was that Mr. Kennedy testified that this per unit number was the per unit number regardless of how many patents were asserted. And in that regard, in that regard, he presented again these three license agreements. They were all portfolio licenses. In the case of Johnson Controls, as I said, the 327 wasn't even asserted. And the other two... But there was testimony about the technical comparability between the patents asserted in those cases and the 327, is there not? There was, Your Honor. But what there wasn't was any testimony about economic compatibility. In other words, this is the same mistake that Mr. Kennedy made in the Apple v. Weiland case, in which he testified that no matter what, this is the rate whether you have one patent, 20 patents, 50 patents. And in Apple v. Weiland, this court held that that was improper. You have to provide some evidence to apportion the value of other patents that are included in the portfolio. And in that case, even in that case, Mr. Kennedy, that's the same expert we're talking about here, applied a 25% discount, which he said, that takes care of all the other patents in the portfolio. And the court said, that's not good enough. You've got to provide evidence that apportions out the value of other licensed patents. So let me... You know, we talked about the earlier case. What did the district court... I mean, we're reviewing for abuse of discretion on this record, right? In terms of a new trial for damages? That's right, Your Honor. What analysis do we have for what the basis upon which the district court denied your motion for a new trial? Nothing, right? Or very little? Very, very little. Very little. I don't recall... So what are we supposed to do with that? Well, you can do the same thing, I think, that was done in Weiland or in the Omega case. There's a clear record of what was put before the jury. It's these three license agreements and the whereas clauses with no apportionment done for the fact that they're all portfolio licenses. And in Omega, what the court had, as you have here, is testimony from the expert that the rate is... In that case, it was $5 per unit. And there, the expert said, as Mr. Kennedy did here, that's the rate, no matter how many patents are licensed. And the court said, no, that has to go back for a new trial in which there's some apportionment made for the value of other licenses in the agreement. So in Omega, just like in Weiland, the court reversed the damages verdict, sent it back for a retrial on damages. And that's what should happen here. Mr. Kennedy has the same pattern. It's the same thing he's done before. Can I move you before your time runs out and my colleagues have more questions on damages to the 101 issue? Yes. Sure. Back on damages. I understand your arguments, but it seems to me that Ecofactor, through Mr. Kennedy, submitted, you know, maybe not a significant amount of evidence, but they made a good shot at their damages theory. And they gave information by which a juror can determine, you know, like a range even of numbers. But I don't see that your side did the same. I see attorney arguments, but I don't see evidence that counters the evidence that was presented. There were two things, Your Honor. First of all, they didn't provide any backup support for these whereas clauses. There was no evidence submitted as to any of the licensees. We have expert testimony. Right. But he conceded, Mr. Kennedy, that he was relying on the whereas clause, not any sales or projected sales information, which he never had. No one had it. The jury never got it. And Mr. Kennedy conceded. So what's your argument here? Are you saying that there was no nexus between the evidence that was provided and the backup apportionment? No. There's two points, Your Honor. Point one is these cases like Word Tech and MLC say if you're going to use a comparable license and you're going to be quoting either a lump sum or a royalty, there's got to be some backup information about the number of sales, the amount of sales, or the projected sales in order for the jury to put that in context. And that wasn't done. Is that a substantial evidence issue? No, I think it's a Daubert issue. I think under Daubert, these cases come up under Daubert. In MLC, Judge Yelston and Daubert are the experts. Daubert goes more towards whether the methodology itself was corrupt or invalid. It doesn't go as to the probative weight of the evidence that's submitted. It's kind of both in this case, Your Honor, because these cases like Word Tech and MLC talk about Daubert, and they talk about the fact that if the expert's going to rely on comparable licenses, then he or she's got to give the jury some background, some data, some facts, and that wasn't done here. The second point is the one I was making with Judge Prost. That's from the Omega decision and the Weiland decision. If you're going to use another license, and that's a portfolio license, you've got to do some apportioning, and Mr. Kennedy didn't do that. But to move on, Your Honor, to the 101 issue, this clearly is a patent-ineligible concept. Now, Judge Albright denied our summary judgment motion, but he didn't resolve step one and find whether or not the patent was abstract, but he sent step two to the jury. That's what happened. And in this case, there's really no dispute as to what the patent calls for, and I think really no dispute whatsoever that this patent is simply ineligible. It is... The Northern District of California and the ITC came out with different decisions. They have on other patents, Your Honor, but... Related patents. Excuse me? Related patents. Related patents, that's right. But here, this patent is fairly unique. It claims the abstract idea of automating thermostat adjustments in response to energy reduction demands. That's the type of thing that people do all the time when they turn their thermostat down to avoid peak hour pricing. And in this instance... I don't understand how that issue was before us. I mean, until you get to some point in gray, you raised, I think, improperly, and I think maybe you can see that, that you were just challenging the summary judgment, which I don't think under our case law is appropriate. So if we take that as a given, you're left with the district court having decided, unusually perhaps, that he's going to go to step two without having resolved step one. That's right. I don't think you challenge that either. The jury instruction... I mean, this is an odd case because it's hard to do step two when you don't even know, have an articulation of what the abstract idea is. That's what seems to have happened in this case. My problem is that you never really challenged that. You seem to be challenging the jury... Either the summary judgment thing, which may well be inappropriate, or the jury determination at step two without having challenged the propriety of the jury instructions or the jury getting it without an articulation of step one. We preserve that, Your Honor, by making our summary judgment motion and objecting to stage step two going to the jury at all. But now that it has, the evidence is very clear that there wasn't any evidence to support step two either. So in this instance, in this instance, this court... Well, how are we supposed to adjudicate step two when we don't even know what the abstract idea is? Because there's never been an adjudication. This isn't like some of our other cases where we haven't decided step one, but we've assumed for purposes of getting to step two that this is the abstract idea. Is that what happened here? I think that's what Judge Albright did. I think Judge Albright assumed that the patent was abstract and he sent step two to the jury. And in the case of step two... But do we know what he... Did he adjudicate what the abstract idea was? Was the jury informed what the abstract idea was? No, no, no. And did you challenge that? We challenged that too. The jury instruction did not include... Why didn't you challenge the jury instruction? I believe that we did, Your Honor. But the fact of the matter is that when we got to step two in front of the jury, their expert conceded, Dr. Palmer, conceded essentially that all these elements were conventional. None of the elements were new. His only point made in about two minutes, and you can read the transcript, was there's an ordered combination. But he never set forth what that ordered combination was. He simply said, here's the order, here's the patent, here's the order of elements. You make an estimate of changing temperature. You get a request from the utility. And then you respond to the request. There was absolutely no backup or support. Your argument is based on what? That the district court improperly granted summary judgment? No. Our argument is that this patent is abstract and that the jury verdict as to step two... The court addressed section 101 via summary judgment. He did, but he didn't resolve it. What he did was... And you lost that. You lost on summary judgment. Well, he didn't grant summary judgment for Ecofactor. He didn't grant summary. We made a summary judgment motion to the court that the patents be abstract based on the face of the patent. He denied the motion without resolving whether the patents be abstract or not and said, I'm sending step two to the jury, which means you're assuming... That puts you in an odd position. You're appealing the loss of a summary judgment motion. No, I'm appealing not only that, but I'm also appealing the verdict on step two. You are appealing the loss of a summary judgment motion. As well as the verdict on step two. And you know that our precedent says that you can't do that. But where you have this situation, Your Honor, which I understand is unusual, where the trial judge, Judge Albright, doesn't resolve the abstractness but assumes it, and I think it's clear from the face of the patent it can be assumed, he sends step two to the jury and what we're appealing is the verdict on step two. Where... Just to move on, I'd like your view because I want the view of the other side as well. Is step two of the Alice equation, is that a legal question? It can be, where there's no dispute of facts as there is here. Here, there was really no testimony that there was anything unconventional about this patent. No algorithm, no calculation, no nothing. Nothing about it was unusual or non-conventional. In your view, is it improper to permit a jury to determine step two of section 101? Certainly without explaining to the jury what the abstract nature of it is. Because if you're going to be making a determination of whether the elements are conventional, that's got to be in the context of why the court has found or assumed the patent is abstract, which is apparently what Judge Albright did. And where did you challenge that? That goes back to my question about you may well be right that you can't consider what step two is without having an articulation of step one because you're supposed to remove the abstract idea from the evaluation of whether or not these factors were conventional, etc. But the jury instruction did not include that and I didn't see any argument in your brief about that that even comes close to touching upon that issue. But what we did was, faced with the situation we had on the ground, we presented evidence from our expert, Mr. Williams, and cross-examining the inventor, that all of these elements were known. They were conventional. They were routine. And there was nothing unique about them. So we presented that evidence. In the face of that, Dr. Palmer's only testimony is, well, here's the order. That's what makes this... Do you have a citation to that testimony? You say that's the only testimony. I'd like to ask your friend on the other side about that as well. I do. Dr. Palmer's testimony was made at... It's at Appendix 6449 to 6451. That's the testimony. It's basically three pages. That's the testimony from Dr. Palmer, who was their only witness on this particular point at all. Thank you, counsel. You have exceeded your time, including rebuttal time, but we'll give you three minutes back for rebuttal. Thank you, Your Honor. Thank you. Mr. Liddell. Thank you, Your Honor. Good morning, and may it please the Court. Brian Liddell for Ecofactor. I'd like to start where my friend began on the damages issue because there's a critical aspect that I think underlies a lot of the Court's questions that my friend didn't talk about. The standard review here is not just abuse of discretion. We're talking about admission of evidence and the standard review of evidence. The standard review in the Fifth Circuit is abuse of discretion and demonstration that the error was not harmless. So even if, and we certainly don't concede this, even if the evidence shouldn't have been admitted, my friend must also show that the evidence being admitted was not a harmless error. They can't make that showing, and indeed, the briefs don't even attempt to make that showing,  because it's impossible to make such a showing. Here, there were numerous different ways in which the jury could reach a damages determination, the verdict that it did. The damages verdict here was not, as is the case in many of the cases cited by my friend, simply an application of exactly the number that the plaintiff's expert asked for. In fact, the jury awarded a lesser amount, so unlike Wylan or Omega, this was not simply an application of that royalty. In fact, the jury's verdict was supported by multiple different possible evidentiary sources that could support it. First, my friend said plainly that the jury could consider Google's other licenses. There was a license presented, and the jury was provided evidence as to how that license could also support a verdict that would be in the range awarded by the jury. Do you think there's an obligation for the district court to articulate these bases in order for us to review it, or are we supposed to just start from scratch and rely on briefs without knowing what the district court's analysis would do? So I don't think there's any obligation for, especially in a Rule 59 motion, for the district court to articulate all the possible ways that the jury's verdict could be supported. We have a jury verdict here, which is, of course, a black box on damages. It just is a number. We don't know exactly how the jury reached that number. We know it couldn't possibly have been simply by multiplication of the royalty asked for that my colleague objects to. It had to be some other mechanism that they used. The district court is charged with reviewing, was there a problem with this verdict such that a new trial is required? But the licenses were put forward to establish comparable licenses and to establish the royalty rate that was included there that we're not allowed to mention. There was other evidence that also, so that wasn't the only evidence of the trial that would support damages. There were three licenses of Ecofactors. There was a license of Google's between Google and Ecobee that was presented. That license, there was testimony from the experts about that license. What if we were to conclude that the licenses that were presented, those three licenses, were not comparable licenses that should not have been used? What do we do about that? Do we say we need a new trial or do we accept what you're saying is, yeah, but there was still some other stuff left that the jury might have relied on. So the jury may have ignored all three licenses and all the testimony and all the expert testimony of Dr. Kennedy and we should just go with that. I think, so what I'm saying is because there's the two-fold inquiry of both abuse of discretion and then if and only if there was an abuse of discretion, whether it was fair or harmless or not, you can, as is often the case, you don't necessarily have to reach the abuse of discretion question, which I think is what you're addressing, as to whether the argument and the evidence about these licenses should have been considered. And by the way, the licenses themselves were admitted without objection. There was no challenge to the admissibility of these three license agreements. So the point that the expert argued literally is recited on the face of unobjected two documents that were submitted to the jury. But you don't have to reach that question and it would be an unnecessary advisory opinion to reach that. But the issue is the testimony of Dr. Kennedy with respect to those licenses, right? Well, no, it's not. That is an issue that's raised, but it's not the only issue. It wasn't the only opinion he offered. It wasn't the only evidence. As I mentioned, there was this other Google license. There was also evidence presented about apportioned profit, essentially an analytic approach testimony about how you would apportion the profits to the features and benefits conveyed by the patent and that the parties might... You mean outside of the three licenses? Absolutely. It was based on a survey that was created by Google. It was based on technical expert testimony about which aspects of the features identified in that survey were benefits provided by the patent. And it was based on an analysis of profits calculated as to the accused products and how that profit could be apportioned to the accused features and then would be split between the parties. But you make a large argument that the licenses were comparable and that the testimony in the whereas clauses should be prohibitive in this respect, right? So I think it's undisputed that the licenses were comparable in the sense that there was technical testimony about the comparability of the licenses as was discussed during my friend's presentation. Well, I'm talking about the royalty rate in particular. So there was extensive evidence about why the royalty rate was comparable, including tied to this analysis. So there was testimony from Ecofactor's CEO about their licensing practices and he talked not about, as my friend characterized it, one patent is this amount. What was discussed was, and this is what the expert talked about as well, that for a given group of technologies, which were the technologies and benefits that were conveyed by this particular patent, the rate would be a particular rate. It may be that there were multiple patents in the same family and in the same area of technology that conveyed exactly the same benefits and that there would not be repeat charges for that same constellation of benefits. But that's not the same as saying whatever patent we have, it's this rate. It's if you're conveying this particular feature set, that's the rate. So do you agree that the jury should not have relied on the number in those two or three licenses, given that the licenses also said that they're relying on sales numbers and they're not relying on a royalty rate? Absolutely not. And I think that's not an accurate characterization of the licenses. So obviously, Your Honor pointed to one during my friend's argument that has nothing like that. The second, I think it's the Schneider license, there's some language in which the licensee asserts that the rate is not reasonable. That's not the same as saying that's not the basis for the royalty actually submitted and used in the license. It's saying they don't want to concede that that amount is reasonable for purposes of possible future assertions against them. That's totally different and arguably something they wouldn't have bothered with if it wasn't the basis for the calculation. But also, there's additional market evidence that was presented in the trial about the relative market share of those licensees and Google that both showed the reasonableness of that the rate was properly recognized to be consistent with that, but also evidence that showed that that rate, whether you accept that it's a royalty rate or not, Google certainly argued that the licenses were lump sums. Those lump sums could also be adjusted according to this market share data, which is yet another reason why the jury could have reached the conclusion that it did. My point is there are about five different paths by which the jury could have reached its verdict, any one of which is proper. And under those circumstances, it cannot be anything but harmless error even if my friend is right that the licenses, or at least the argument about them, because they don't contest the admission of the licenses, even if you accept that the argument about them has been submitted, there's no showing that it affected the verdict. And here, one of the ways we know that is Google waived any argument that the damages verdict was not supported by substantial evidence when it waived making that argument in its Rule 50B motion. They made an argument about damages in their 50A, not in the 50B. Nothing in there suggests that the jury's verdict on damages was not supported by substantial evidence. Under those circumstances, it's hard to imagine how it could be anything but harmless. Can I move you to 101? Absolutely. Did the district court, in your reading of the record, did the district court draw a conclusion about whether or not there was an abstract idea? What did the district court do with respect to step one? Did the jury have any information with respect to the abstract idea? I think it's fair to say that the district court did not present any specific information to the jury about a particular abstract idea. Do you think what he did was he said, we'll assume for the sake of argument that there's a step one abstract idea and therefore we should move on to the jury at step two? Is that your view of what's found? Yes. But then doesn't the jury have to know what the abstract idea is in order to establish... I mean, our case law, do you agree that our case law says that in order to evaluate step two inventive concept, you can't include the abstract idea in that analysis? So if you agree with that, then how does the jury not need to know what the abstract idea is? Now, your friend may not have made that argument, and maybe that's the right answer. So the first answer is exactly that, that if that's an argument, it's an argument about jury instructions and it was waived because it was never raised and it's not raised in this appeal. You heard no citation to anywhere in the brief. No jury instruction as to step one. That's right. And there was no jury instruction that was objected to, and there's certainly nothing, even if they objected to it before trial, I defy anyone to find it in the briefs before this court, which is how we determine what issues are presented on appeal. But leaving that aside, and that may be an important factor, how does the jury go forward and evaluate step two? Without having any idea what the abstract idea is. Well, I think the short answer to that is whatever the abstract idea is, the question for the jury is, is this simply an application of conventional principles and conventional combination, both individually and as an ordered combination? I think the way to read the verdict is there's no abstract idea that could be articulated where that would be true because the jury found that this is not conventional, and that's certainly well supported. I would disagree with my friend that this was only Dr. Palmer's testimony. There was also testimony at admissions from Google's expert on cross-examination, Mr. Williams, about this at pages 6415 to 16 of the appendix. There was testimony from the inventor about this at pages 5402 to 5403, 5397 to 98. There was a study presented, an evidentiary document called, it was a field study about this technology. It was Plaintiff's Exhibit 928, which starts at page 10819 of the appendix. There's information at pages 10823 and 10830 about how this technology was nonconventional, was new and novel and different and applied. One of the key differences, in fact, that was discussed by the experts was the fact that the temperature, the recognition and the adjustment based on rate of change was not calculated as one might conventionally do by simply looking at how does the temperature change in the room, but by calculating a rate of change in light of the outside temperature as well as the inside, which was completely unconventional and completely contrary to the way that those in the field had ever done this. There was extensive evidence about unconventionality. I want to add, however, that this is an issue on which my friend bore the burden of proof by elevated evidence, clear and convincing. The circumstances under which a jury verdict rejecting the contention of a party with a clear and convincing burden can be overturned are incredibly limited. Before you sit down, I want you to respond to the question that I posed to the friend on the other side concerning whether this issue is even proper before us. Absolutely not. Your Honor is absolutely correct. The red brief explicitly indicates that this is an appeal of the District Court's denial of summary judgment. That's the point heading at page 51. This Court's precedent and Supreme Court precedent make 100 percent clear that when you have a trial on the merits, a denial of summary judgment is never an appealable order. They did not appeal a denial of the JMOL. Mr. Van Nistar, you said that it is proper before us because the issue is bifurcated and one was left to the jury and the other was not. There's no authority for that assertion and it's simply not true. The Supreme Court says once you have a denial of summary judgment and then a trial on the merits, the summary judgment is simply an interlocutory order that is not to be the subject of appeal. But the issue is still a life decision. The issue of the sufficiency of the verdict. Not the correction, not the correction of the summary judgment denial, but the issue. But I would argue that the issue was not preserved and presented in the appeal because what would have to be appealed would be the denial of JMOL under Rule 50A and 50B. But you argued on Step 1.2. You made an argument. Well, we responded to the argument, obviously. We believe it's improper and that's the first argument that we put in our brief, that this is not properly before the court. Obviously, it's prudent to address the issue. Did you make that argument below? That it's, well. Not that it was an improper argument, but did you make the argument below that the court should not bifurcate the Alice inquiry? No, I think, let me, I'm not sure I understand the question exactly and I don't think it was bifurcated in quite the way my friend suggested. This court's cases, Atrix and many others, make very clear that Step 2 is almost always or certainly very often a factual inquiry and relies on underlying questions of fact. Many cases have so held and many cases often don't reach the Step 1 analysis because they take for, even if you take it as a given, if there are factual issues on Step 2, motions to dismiss are often denied, for example, because it wouldn't be productive for the court to render advisory opinions on one issue when the other is dispositive. Here, the district court basically said, I don't necessarily agree with you on either step, but at a minimum, there seem to be fact issues as to Step 2. Let's let the jury decide that. Is that really the way our case law needs? I mean, I thought, I understand there certainly have been cases that come to mind where our court has said we don't need, we're not going to, without resolving it, we will just accept the idea. It's not that they say we don't care what the abstract idea is, let's just move on to Step 2. It's that we adjudicate it or at least tentatively adjudicate it for purposes of reaching Step 2. And was that done here in your view? I think the district court, in submitting Step 2 to the jury, effectively, I mean, I think you have to take all inferences in favor of the verdict and presume that the district court did in fact, it wasn't necessary for it to resolve that question to submit Step 2 to the jury. And once the jury ruled that there was no showing by Google to support its burden on Step 2, there was no need for the district court to further address Step 1 once there's a verdict. Do you agree that in order to get to Step 2, there has to be at least an assumption for purposes of reaching Step 2 that this is the idea, that there is an abstract idea and this is that abstract idea? I don't think I would agree with that. I think the district court can do exactly what it did here and submit the issue to the jury under the assumption that under... Well, in our cases where that has happened, there's, as Judge Gross is saying, at least an assumption that Step 1 has been addressed and it's time to move on. I don't think that... I don't recall a situation such as this where the court doesn't address Step 1 at all, just hands without a jury instruction, hands to the jury, the decision to make a Section 101 analysis only on Step 2. Well, if... I don't... So I think that there are vanishingly few, as you pointed out, cases in this court... Vanishingly few. Where... Let me be clear. Where there's been a trial judgment on an aspect of Section 101. That's very rare, a circumstance that we don't see very often in these cases. And so I don't know that there's a case specifically addressing that question of how you present it to the jury. I'm not aware of any case in this court addressing that issue. What I am aware of is numerous cases which are typically being adjudicated on a motion to dismiss under Rule 12, for example, where the district court says, I don't need to decide whether there's an abstract idea of what it is because it's quite clear that there are factual disputes as to the Step 2 inquiry. Really? And have we just... Have we affirmed a case? I'm hard-pressed to think of one off the top of my head, although I believe this court... Certainly this court's rulings in cases like Atrix and Hewlett-Packard sending cases back where there were factual issues on Step 2 are indicative of that. I know that, certainly sitting on the district court bench, I'm familiar with a number of Judge Stark's decisions, one at least in which I argued the case, so I'm intimately familiar with it, in which he frequently would make such a ruling because otherwise the court is essentially rendering an advisory opinion, and that's not appropriate. But I do want to get back to the fact that if the issue is, as Your Honor seemed to be suggesting... Counsel, you can't get back for very long. Do you want to conclude your argument? Absolutely. I will just note that if this is an issue about what the jury instructions were, that was never appealed, and so it's not properly before the court. Thank you. Thank you, Your Honor. Mr. Van Ness has three minutes, if you need it. Thank you, Your Honor. I want to clear up one misimpression that counsel left. Judge Prosher, reading of the license agreements is correct. The Daikin agreement and the... I know, but you want to address one of his main arguments, which is that even if you take all of that stuff off the table, there was still enough evidence that the jury had to reach its determination. Absolutely, I will. His main point is harmless error. You know that that's sort of the last spot to go. The error wasn't harmless because the entire damages opinion of Mr. Kennedy was based on the whereas clause. These other things he's talking about were all posed by him as confirmatory or background. The whole point of this is these license agreements were low lump sums, modest lump sums. Again, they're under protection, but this verdict is a huge multiple of those and it was based on the fact that he made his ask based on this per unit number. Everything else was window dressing in that opinion and you know that's the case because they didn't present anything else. The only thing I heard counsel say was there were a couple of Google licenses. They're also something that he didn't rely on. Mr. Kennedy didn't rely on those. He dismissed everything and said they want this number per unit. That's what they're entitled to. Now, I will say this. These license agreements weren't admitted without objection. We moved to redact the whereas clauses from these agreements. We asked Judge Albright that because the opinion shouldn't have been in in the first place, would he redact the number? He refused to do that. So they weren't admitted without objection. There was plenty of objection to them. The other point I want to make is this was a two patent case when it went to the jury. The jury found infringement of only one. Mr. Kennedy said that doesn't matter. It's the same number no matter how many patents there are and when he put these license agreements in front of the jury with no background evidence and no support whatsoever and said it's the per unit number from the whereas clauses, he made no effort to say well, this is a full portfolio license and this is why it applies to this one patent or in any one of these three, even the Johnson Controls Agreement, 327 wasn't even asserted. Now, turning very briefly to the Step 2 issue we've been discussing, I don't know what we were expected to do. We made the motion. Judge Albright must have assumed that Step 1 was satisfied and there'd be no basis to send it to the jury. It went to the jury. There was only testimony from Palmer about this so-called order of combination and that's where I cited 64496451. You can read that. There's absolutely no substance to it whatsoever. It's a conclusory statement and no other witness addressed that other than Mr. Williams, our expert, who said, no, this is a routine, conventional elements put together in a routine, conventional way and it's the absence of any evidence to contradict that that we're complaining about and once it's given to the jury, as Judge Reyna said, once it's given to the jury, then yes, it's a sufficiency of evidence issue. There wasn't evidence sufficient to show that there were unconventional or non-routine elements. I'm just switching the burden around here with your burden to show by clear and convincing evidence that it was. We presented our expert testimony and they conceded that every element was conventional. Their expert conceded every element was conventional. Our expert testified that every element was conventional. The only rebuttal they had at all was their expert putting the patent up and showing the order of the elements and saying in a conclusory way, that's the order combination that I'm relying on. That's simply not enough to support the verdict on step two and that's why we're here. Thank you, counsel. Thank you. Case is submitted.